# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSE CASTANEDA,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner*,<br>*Social Security Administration*,<br><br>  Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:13-cv-00338-DN-DBP<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin Pead |

## I.   INTRODUCTION

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B).  (Docket No. 16.) Plaintiff appeals the Social Security Commissioner's decision that denied his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").  (Dkt. No. 3.)  After considering the parties' briefs, the administrative record, and the relevant law, this Court **RECOMMENDS** that the District Court **AFFIRM** the Commissioner's decision.

## II.   PROCEDURAL HISTORY

On May 21, 2010, Plaintiff, aged forty-five at the time, protectively filed a Title II DIB application.  (Tr. 130-36.)  He alleged November 12, 2009 as his disability onset date.  (*Id.* 130.) On August 30, 2010, the Commissioner initially denied the application.  (*Id.* 70.)  On September 28, 2010, the Commissioner denied it upon reconsideration.  (*Id.* 71.)  On September 19, 2011,

Plaintiff received a hearing before an administrative law judge ("ALJ"). (Tr. 27-69.) On October 28, 2011, the ALJ issued a decision declining to find Plaintiff disabled. (*Id.* 14-26.) On April 23, 2013, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-3.) This denial made the ALJ's decision the Commissioner's final decision for appeal purposes. 20 C.F.R. § 404.981.

### III. STATEMENT OF RELEVANT LAW

#### A. Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last or be expected to last for twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

#### B. Process for Determining Disability Under the Act

To determine disability, social security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) has a severe impairment, (3) has a severe impairment that meets or medically equals a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work. 20 C.F.R. § 404.1520(a)(4).

### IV. ALJ DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 12, 2009. (Tr. 16.) At step two, the ALJ found Plaintiff suffered the following severe impairment: (1) degenerative disc disease of the lumbar spine. (*Id.* 17.) At step three, the ALJ concluded that Plaintiff's impairment did not meet or medically equal a listed impairment. (*Id.*)

Between steps three and four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "perform sedentary work, that is [] lifting and/or carrying a maximum of 10 pounds occasionally and less than 10 pounds frequently" with additional limitations. (Tr. 18.)

Regarding additional limitations, the ALJ concluded that Plaintiff was "literate (fluent) in Spanish both written and oral . . . ." (*Id.*) However, Plaintiff possessed "a limited understanding in English, both written and oral . . . ." (*Id.*) The ALJ also concluded that Plaintiff could never crouch or climb scaffolds, ladders, and ropes. (*Id.*) Plaintiff could occasionally climb ramps and stairs. (Tr. 18.) Plaintiff could only occasionally balance, kneel, stoop, and crawl. (*Id.*) Plaintiff was limited in pushing and pulling with his lower extremities. (*Id.*) Plaintiff had to avoid concentrated exposure to rough/uneven surfaces and hazards such as heights and machinery. (*Id.*)

At step four, the ALJ concluded that Plaintiff could not perform past relevant work as a medium semi-skilled load operator, a heavy semi-skilled construction worker, or a heavy semi-skilled material handler. (Tr. 23-24.)

At step five, the ALJ relied on the Medical-Vocational Guidelines (grids) at 20 C.F.R., Pt. 404, Subpt. P, App. 2[1] as well as vocational expert ("VE") testimony. Relying thereupon, the ALJ concluded that Plaintiff could perform a significant number of sedentary jobs in the national economy such as an unskilled leaf tier and an unskilled ampule sealer. (Tr. 24-25.)

---

[1] The grids apply in cases "which cannot be evaluated on medical considerations alone" because an individual is "not engaging in substantial gainful activity," has a medically severe impairment, and such an impairment prevents the claimant from performing past relevant work. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(a). *See also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.").

## V. STANDARD OF REVIEW ON APPEAL

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## VI. PLAINTIFF'S APPEAL

On appeal, Plaintiff asserts four errors that require remand. (Dkt. No. 18.) First, the ALJ erred at step five when she found Plaintiff able to communicate in English and therefore not disabled under the grids. Second, the ALJ failed to meet her burden of proof at step five because the VE testified to additional limitations that the ALJ failed to include in her written RFC assessment. Third, the ALJ improperly evaluated Plaintiff's credibility. Fourth, the ALJ provided an insufficient RFC analysis.

### A. Whether ALJ Erred When she Found Plaintiff Able to Communicate in English

In his disability report, Plaintiff indicated he could speak, read, and understand both oral and written English but he could not write more than his name in English. (Tr. 157.) In some contrast, at his administrative hearing, Plaintiff testified he could understand "very little" English, and he could only read one or two words in English. (*Id.* 46.) He testified that he could not fill out a job application in English. (*Id.*) Plaintiff also testified he had a sixth grade

education.  (*Id.*)  The VE testified that Plaintiff's "limited understanding of English, both written and oral" would not affect the availability of jobs as a leaf tier or ampule sealer.  (Tr. 66.)

In determining Plaintiff's vocational abilities at step five, the ALJ evaluated Plaintiff's English skills.[2]  (*Id.* 24.)  She found Plaintiff had "a marginal education and [was] able to communicate in English . . . ."  (*Id.*)  Based in part on this finding, the ALJ concluded that Plaintiff could perform sedentary, unskilled work in the national economy as a leaf tier and ampule sealer.  (*Id.* 24-25.)

On appeal, Plaintiff argues that ALJ erred at step five.  Based on Plaintiff's testimony, the ALJ should have found Plaintiff unable to communicate in English.  (Dkt. No. 18 at 12.)  Plaintiff argues that the ALJ's error requires remand because Plaintiff's inability to communicate in English "directs a finding of 'disabled'" under the grids when coupled with Plaintiff's inability to perform past relevant work, his lack of transferable skills, and his sedentary work restriction.  (*Id.*)

To support his argument, Plaintiff relies specifically on the grid rule at 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(h)(1),[3] which provides that:

> [A] finding of 'disabled' is warranted for individuals age 45-49 who: (i) Are restricted to sedentary work, (ii) Are unskilled or have no transferable skills, (iii) Have no past relevant work or can no longer perform past relevant work, and (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.[4]

---

[2] The Commissioner "consider[s] a person's ability to communicate in English" as an educational factor when evaluating "what work, if any, [the person] can do."  20 C.F.R. § 404.1564(b)(5).

[3] This Court could not locate any evidence that the ALJ considered § 201.00(h)(1) in her decision or that Plaintiff ever mentioned § 201.00(h)(1) prior to this appeal.

[4] § 201.00(h)(1) corresponds with 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 1, § 201.17.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 n.9 (10th Cir. 1989) (noting that § 201.00(h) "is part of the explanation and definitions section illuminating table 1, in which rule 201.17 . . . appears.").  In turn, Table 1, § 201.17 provides that an individual age 45-49 is disabled when such an

> *i.     Whether § 201.00(h)(1) Directs Disability Determination Where Plaintiff's RFC Does Not Meet Grid Criteria*

Even assuming that Plaintiff cannot communicate in English and that he lacks transferable job skills, he has not demonstrated that the ALJ should have relied on the grid criteria at § 201.00(h)(1) to "direct[] a finding of 'disabled'" (Dkt. No. 18 at 12) in his case.

The grids applicable to § 201.00(h)(1) only "direct[] a conclusion as to whether" an individual "is or is not disabled" where "the findings of fact made with respect to a particular individual's vocational factors and [RFC] *coincide with all of the criteria of a particular [grid] rule . . . .*" 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(a) (emphasis added).

Relevant here, the grid criteria applicable to § 201.00(h)(1) only "direct" a disabled/not disabled finding for individuals whose RFC allows a "[m]aximum sustained work capability" at the sedentary level. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00, App. 2, Table 1, § 201.17.

In this case, the ALJ's findings of fact with respect to Plaintiff's RFC did *not* coincide with all the sedentary work criteria at § 201.00(h)(1) and Table 1, § 201.17. That is, the additional limitations in Plaintiff's RFC (Tr. 18) prevented him from performing "the full range of sedentary work" required for maximum sustained work capability under the applicable grids. (*Id.* 24).[5]

---

individual is "illiterate or unable to communicate in English" and is "unskilled" or possesses no previous work experience.

[5] *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984) ("[A] claimant must be able to perform the full range of [] work on a daily basis in order to be placed in a particular RFC category" on the grids because placement on the grids "depends on a claimant's 'maximum sustained work capability' . . . ."); *Martin v. Bowen*, 652 F. Supp. 1270, 1275 (D. Kan. 1987) ("Placement in one of the" grid "categories of RFC depends on a claimant's 'maximum sustained work capability,' i.e. 'his capacity for work activity on a regular and continuing basis.' . . . In other words, a claimant must be able to perform the *full range* of such work on a *daily basis* . . . .").

Because Plaintiff's RFC did not coincide with all of the criteria for sedentary work in the applicable grids, the ALJ correctly refrained from using the grids to "direct" a disabled/not disabled finding in Plaintiff's case. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, *the rule does not apply in that particular case* and, accordingly, *does not direct a conclusion of disabled or not disabled*.") (emphasis added). *See also Campbell v. Bowen*, 822 F.2d 1518, 1523 n.2 (10th Cir. 1987) ("Where exertional limitations prevent the claimant from doing the full range of work specified in his assigned [RFC], or where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work.").

Instead, the ALJ correctly used the grids as a "framework" in conjunction with VE testimony "[t]o determine the extent to which" Plaintiff's additional RFC limitations "erode[d] the unskilled sedentary occupational base . . . ." (Tr. 24.) *See* SSR 83-11, 1983 WL 31252, at *1 (1983) ("The criteria of a [grid] rule are met only where they are exactly met. Where the criteria of any rule are not met, a decision is not directed . . . . In these cases, the rules are used . . . as a framework for decisionmaking."); SSR 83-12, 1983 WL 31253, at *3 (1983) (noting that vocational "assistance is advisable [] where an individual's exertional RFC does not coincide with the full range of sedentary work.").

Based on the analysis above, the Court rejects Plaintiff's argument that the grids at § 201.00(h)(1) "direct" a disability finding in his case. Substantial evidence supports the ALJ's ultimate decision to refrain from relying on the grids to "direct" a disability finding where Plaintiff possessed additional RFC limitations not contemplated by the grids. This ultimate

decision would stand even assuming that Plaintiff lacked English communication skills and transferable job skills. *See Ortiz v. Chater*, 986 F. Supp. 479, 487 (N.D. Ill. 1997) (affirming ALJ's decision not to apply Table 1, § 201. 17 where claimant met all grid criteria except for his inability to perform full range of sedentary work, and affirming ALJ's reliance on vocational expert who testified the claimant could still perform other sedentary work).

Accordingly, this Court **RECOMMENDS** that the District Court **AFFIRM** the ALJ's ultimate decision at step five of the inquiry to not rely on 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(h)(1) for a disability determination.

### ii. *Assuming § 201.00(h)(1) Applies, Whether Plaintiff Lacks Transferable Skills*

If the District Court disagrees with this Court's analysis above, this Court provides the following alternative analysis under the assumption that Plaintiff's RFC meets the maximum sustained work capability required for § 201.00(h)(1).

Assuming § 201.00(h)(1) applies, this Court harbors concerns about Plaintiff's ability to communicate in English. However, even if the ALJ erred when she found Plaintiff able to communicate in English, the Court concludes that Plaintiff still failed to meet all the disability criteria at § 201.00(h)(1). Specifically, the record does not support Plaintiff's argument that he met the disability criteria at § 201.00(h)(1)(ii) that requires an individual to be "unskilled" or "have no transferable skills."

Plaintiff's past relevant work was unquestionably semi-skilled rather than unskilled. (Tr. 23.) Additionally, the Commissioner takes issue with Plaintiff's contention that he lacks transferable job skills. (Dkt. No. 25 at 17.) The Commissioner notes this contention is inaccurate because the ALJ never ruled on Plaintiff's transferability of job skills. Instead, the ALJ stated "[t]ransferability of job skills is not material to the determination of disability because

using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills . . . ." (Tr. 24.)

Plaintiff failed to appeal the ALJ's transferability analysis. Therefore, it is unclear why he unequivocally states that he lacks transferable job skills. (Dkt. No. 18 at 12.) Moreover, in his reply brief, Plaintiff fails to respond to Defendant's transferability argument other than to repeat that "he has no skills that would transfer to sedentary work." (Dkt. No. 26 at 3.)

Plaintiff's reply misses the point where there is no finding in the record about transferability, and the jobs identified by the VE at step five are both "unskilled" sedentary work. (Tr. 25.) *See* SSR 82-41, 1982 WL 31389, at *1 (1982) ("[T]ransferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do *unskilled* work.") (emphasis added).

Even if the ALJ erred about Plaintiff's English skills, the Court concludes that the ALJ did not err when she ultimately refrained from finding Plaintiff disabled under the grid criteria at § 201.00(h)(1)(ii).[6] Based on the analysis above, substantial evidence supports the ALJ's reasoning that transferability was immaterial to Plaintiff's disability determination and her conclusion that Plaintiff could perform unskilled sedentary work. *See* SSR 82-41, at *2 ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other *skilled or semiskilled jobs*.") (emphasis added).

---

[6] *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (approving harmless error analysis "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). *See also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing than an error is harmful normally falls upon the party attacking the agency's determination.").

Accordingly, the Court **RECOMMENDS** that the District Court **AFFIRM** the ALJ's ultimate decision at step five of the inquiry to not find Plaintiff disabled under 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).

**B. Whether ALJ Failed to Meet her Burden of Proof at Step Five**

At step five, "the ALJ bears the burden of proof . . . to show that there are jobs in the regional and national economies that the claimant can perform with the limitations the ALJ has found him to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). To this end, the ALJ bears the burden to produce or develop vocational evidence. *Id.*

On appeal, Plaintiff argues that the ALJ failed to meet her burden of proof at step five because, based on the ALJ's own findings, she should have found Plaintiff disabled. (Dkt. No. 18 at 16.) To support this argument, Plaintiff emphasizes that the RFC the ALJ provided to the VE during Plaintiff's administrative hearing "is not the same" RFC the ALJ ultimately included in her decision. (*Id.* at 17.) The VE testified about an RFC that included "a sit-stand option at will" and an RFC that limited Plaintiff to occasional "other" postural changes. (Tr. 65.) However, in her written decision, the ALJ did not include these RFC limitations. (*Id.* 18.)

Plaintiff asks for remand on this issue because the ALJ "should not be allowed to provide one hypothetical [RFC] at the hearing for which she elicits [VE] testimony, and then provide a different [RFC] finding in her unfavorable decision for which she did not elicit [VE] testimony." (Dkt. No. 18 at 18.)

Plaintiff further asks for remand because he alleges that the additional limitations provided to the VE, if adopted by the ALJ, would have eliminated Plaintiff's ability to work as a leaf tier and ampule sealer. (*Id.* at 17.) For instance, Plaintiff argues that the Dictionary of Occupational Titles ("DOT") descriptions for these jobs do not include a sit-stand option. (*Id.*) Moreover, the

VE testified that the DOT descriptions for both jobs require "frequent" reaching, handling, and fingering. (Tr. 68.) In contrast, the RFC that the ALJ provided to the VE limited Plaintiff to "occasional" other postural changes, which presumably included "occasional" reaching, handling, and fingering. (Dkt. No. 18 at 17.)

At a minimum, Plaintiff believes that a remand is warranted because the ALJ failed to elicit a reasonable explanation from the VE about the conflict between Plaintiff's additional RFC limitations and the DOT requirements for the jobs of leaf tier and ampule sealer. (*Id.* at 17-18.) *See* SSR 004-p, 65 Fed. Reg. 75759-01, at *75759 (Dec. 4, 2000) (imposing affirmative duty on ALJ to "obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . .").

The Commissioner opposes Plaintiff's arguments as moot because, in her RFC assessment, "the ALJ did not ultimately find that Plaintiff required an at-will sit/stand option" and did not limit Plaintiff to occasional other postural changes. (Dkt. No. 25 at 19.) "Thus, Plaintiff has not identified any conflict, let alone any unresolved conflict." (*Id.*)

The Court agrees with the Commissioner and **RECOMMENDS** that the District Court **AFFIRM** the ALJ's determination at step five because she met her burden of proof. "By posing a particular hypothetical" to the VE that included the aforementioned RFC limitations, the ALJ did "not confine herself to making an RFC determination mirroring the hypothetical limitations." *Ruth v. Astrue*, No. 09-7101, 2010 WL 971817, at *2 (10th Cir. Mar. 18, 2010) (unpublished) ("[A]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true.").

Moreover, the ALJ's decision to omit the aforementioned limitations from her ultimate decision renders inconsequential any conflict between the VE's testimony and the DOT job

descriptions stemming from those limitations. *See Barrett v. Astrue*, No. 08-2300, 2009 WL 2400267, at *5-6 (10th Cir. Aug. 6, 2009) (unpublished) (rejecting argument about "a conflict between the VE's testimony and the DOT" based on a mental RFC limitation provided in "hypothetical to the VE" because the ALJ ultimately chose not to include the mental limitation in his written decision).

## C. Whether ALJ Improperly Evaluated Plaintiff's Credibility

In her decision, the ALJ provided the following credibility determination for Plaintiff:

> After reviewing the clinical and objective findings in addition to the factors contained in SSR 96-7p, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not fully credible and are somewhat out of proportion to the medical record and all of the other evidence. Therefore, the undersigned finds the claimant's allegations are not fully persuasive and thus, the undersigned finds the claimant can perform at higher levels than the claimant alleges or at higher levels than the claimant perceives they can.

(Tr. 21.)

Plaintiff appeals the ALJ's credibility finding because the ALJ allegedly provided no analysis, and instead wrote the single boilerplate paragraph quoted above. (Dkt. No. 18 at 13-14.) Plaintiff takes issue with the ALJ's apparent failure to "link" her credibility finding with evidence in the record. (*Id.* at 14.) *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (finding ALJ erred where he failed to provide "link between the evidence and credibility determination . . . ."). Plaintiff also appeals the ALJ's reliance on "a few isolated symptom-free instances" to reject Plaintiff's "assertion that his impairments and related symptoms preclude all work activity." (Dkt. No. 18 at 14.)

The Commissioner opposes Plaintiff's argument as "disingenuous." (Dkt. No. 25 at 11.) The Commissioner correctly notes that the ALJ provided eight paragraphs of analysis under the

heading "Credibility and Compliance" rather than the one paragraph Plaintiff alleges. (Tr. 20-21.) Moreover, the Commissioner argues that the boilerplate paragraph in the ALJ's credibility analysis does not constitute error because the ALJ also "referred to specific evidence in support of her conclusions . . . ." (Dkt. No. 25 at 11.) *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (noting boilerplate language "is problematic only when it appears 'in the absence of a more thorough analysis.'").

The Court agrees with the Commissioner and believes that the ALJ relied on substantial evidence when she concluded that Plaintiff lacked credibility. This substantial evidence supported the ALJ's decision to give less weight to Plaintiff's assertion that his impairments precluded all work activity.

In coming to her credibility conclusion, the ALJ cited "objective medical evidence of record." (Tr. 21.) For instance, she cited Plaintiff's "generally [] unremarkable" physical examinations (Tr. 381-84, 405-29, 464) and reasoned that such examinations did "not support [Plaintiff's] assertion that he needs to lie down for extended periods during the day." (Tr. 21.)

The ALJ also cited Plaintiff's refusal to comply with treatment. (*Id.*) She noted that Plaintiff's healthcare providers "encouraged him" to perform more physical activity but Plaintiff testified to performing "very little physical activity . . . ." (*Id.*) *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (concluding that an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief" when assessing credibility).

The ALJ also referenced examination notes (Tr. 400) wherein Plaintiff's physical therapist wrote that Plaintiff "displayed several indications of less than a full effort and an exaggeration of symptoms. His performance was also determined to be partially credible." (*Id.* 21.) *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (affirming the Secretary's

negative credibility finding where an examining doctor suspected the claimant of "malingering.").

Because the ALJ linked her credibility finding to the aforementioned substantial evidence in the record, this Court **RECOMMENDS** that the District Court **AFFIRM** the ALJ's credibility determination regarding Plaintiff.

**D. Whether ALJ Improperly Determined Plaintiff's RFC**

Plaintiff appeals the ALJ's RFC assessment as "not supported by substantial evidence." (Dkt. No. 18 at 15.) Specifically, Plaintiff alleges that the RFC "assessment appears as a conclusion" at Tr. 18 "with no reasoning and no citation of specific facts." (*Id.*) "While the ALJ summarized the medical evidence, her [RFC] assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence." (Dkt. No. 26 at 4.) *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . .").

The Court finds Plaintiff's argument unpersuasive. While the ALJ set forth her RFC conclusion at Tr. 18 as Plaintiff alleges, the ALJ clearly based this conclusion on the six-page analysis right beneath the conclusion wherein she "discuss[ed] and weigh[ed] all" the substantial record evidence. (Dkt. No. 25 at 9.) In her analysis, the ALJ considered Plaintiff's statements, all the medical evidence related to functioning, Plaintiff's credibility and compliance, and the medical opinions in the record. (Tr. 18-23.)

Regarding medical opinions, the ALJ explicitly stated that her RFC assessment was "consistent" with the medical opinion provided by Plaintiff's orthopedic specialist, Dr. David Witter. (*Id.* 22.) The ALJ also explained that her RFC assessment differed from the RFC

assessment provided by state agency medical consultants. (Tr. 23.) The ALJ limited Plaintiff to sedentary work while state agency medical consultants concluded that Plaintiff could perform light work. (*Id.*)

The Commissioner also persuasively notes that "Plaintiff does not identify or cite to any evidence that he contends the ALJ did not discuss. Nor does Plaintiff identify or cite any evidence that he contends the ALJ did not *adequately* discuss." (Dkt. No. 25 at 10.) Indeed, "Plaintiff has not . . . identified record medical evidence that conflicts with the ALJ's conclusion that he could perform a limited range of sedentary exertional work . . . ." (*Id.* at 14.)

Because the ALJ provided a six-page narrative analysis with substantial evidence that supported her RFC conclusions, this Court **RECOMMENDS** that the District Court **AFFIRM** the ALJ's RFC assessment.

## VII. RECOMMENDATIONS

For the reasons analyzed above, this Court **RECOMMENDS** that the District Court **AFFIRM** the Commissioner's decision to deny Plaintiff social security disability benefits.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 7th day of August, 2014.

By the Court:

DUSTIN PEAD
United States Magistrate Judge